1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| GEORGINA NARDONE, on behalf of I.F. (a minor), | Case No. 1:21-cv-01444-JLT-SKO |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT BE DENIED, AND THE ACTION BE REMANDED TO THE ACTING COMMISSIONER FOR FURTHER PROCEEDINGS |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | (Docs. 15 & 19) |
| Defendant. | 14-DAY DEADLINE |
| _____/ | |

17
18
19

## I.      INTRODUCTION

On September 28, 2021, Plaintiff Georgina Nardone ("Plaintiff"), on behalf of her minor child I.F., filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

1    For the reasons set forth below, the undersigned recommends that Plaintiff's motion for
2  summary judgment be granted, that Defendant's motion for summary judgment be denied, and that
3  the action be remanded to the Acting Commissioner for further proceedings.

4                              **II.    BACKGROUND**

5    On March 30, 2020, an application for SSI was protectively filed by Plaintiff on behalf of
6  I.F., a child under the age of 18.  (Administrative Record ("AR") 41, 157, 177) (I.F. was born on
7  April 1, 2009).)  The application alleged that I.F. became disabled on January 1, 2015, due to
8  dyslexia, attention deficit hyperactivity disorder (ADHD), anxiety disorder, "behind compared to
9  classmates," difficulty speaking, and "difficulties with sleeping (hyperactive)."  (AR 150–56.)

10    The Commissioner denied Plaintiff's application for benefits initially on June 8, 2020, and
11  again on reconsideration on August 6, 2020.  (AR 64–67; AR 75–79.)  Consequently, Plaintiff
12  requested a hearing before an Administrative Law Judge ("ALJ").  (AR 80–95.)  The ALJ conducted
13  a hearing on December 22, 2020.  (AR 27–40.)  Plaintiff appeared at the hearing with I.F. and her
14  counsel, and gave testimony.  (AR 27–40.)  I.F. did not testify.

15    In a decision dated January 15, 2021, the ALJ found that I.F. was not disabled.  (AR 15–23.)
16  Plaintiff sought review of this decision before the Appeals Council, which denied review on August
17  3, 2021.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.
18  20 C.F.R. § 416.1481.

19                           **III.    SCOPE OF REVIEW**

20    The ALJ's decision denying benefits "will be disturbed only if that decision is not supported
21  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
22  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that
23  of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must
24  determine whether the Commissioner applied the proper legal standards and whether substantial
25  evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d
26  909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a
27  preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

28    "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as

1  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting
2  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire
3  record as a whole, weighing both the evidence that supports and the evidence that detracts from the
4  Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of
5  supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and
6  internal quotation marks omitted).

7                          **IV.      APPLICABLE LAW**

8       A child (defined as an individual under the age of eighteen) is considered disabled for
9  purposes of disability benefits if they are "unable to engage in substantial gainful activity due to a
10  medically determinable physical or mental impairment." *Bowen v. Yuckert*, 482 U.S. 137, 140
11  (1987) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)); Lowe v. Berryhill, Case No. 1:17-cv-
12  00349-SKO, 2018 WL 2096264, at *7 (E.D. Cal. May 7, 2018).  The impairment or impairments
13  must "result[] in marked and severe functional limitations, and which can be expected to result in
14  death or which has lasted or can be expected to last for a continuous period of not less than twelve
15  months." *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) (quoting 42 U.S.C. §
16  1382c(a)(3)(C)(i)).

17       The ALJ must undertake a three-step sequential analysis in the process of evaluating a child's
18  disability.  In the first step, the ALJ must determine whether the child is engaged in substantial
19  gainful activity.  20 C.F.R. § 416.924.  If not, in the second step, the ALJ must determine whether
20  the child has a severe impairment or a combination of impairments causing marked functional
21  limitations.  *Id*.  If so, in the third step, the ALJ must determine whether the child has a severe
22  impairment or combination of impairments that meets or equals the requirements of the Listing of
23  Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id*.  If so, the child is found to be
24  disabled, assuming the twelve-month duration requirement is also met.  *Id*.

25       Step three encompasses two analytical steps.  First, it must be determined whether the
26  claimant's impairment meets or medically equals a Listing.  Second, the impairment must also
27  satisfy all the criteria of the Listing.  20 C.F.R. § 416.925(d).  The mere diagnosis of an impairment
28  in the Listing is insufficient, without more, to sustain a finding of disability. *Young v. Sullivan*, 911

F.2d 180, 183 (9th Cir.1990); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.1985).  If the claimant does not meet or medically equal a Listing, he may still be considered disabled if an impairment results in limitations that "functionally equal the listings."  20 C.F.R. § 416.926a(a).

In determining whether the severe impairment functionally equals a Listing, the ALJ must assess the claimant's functioning in six "domains."  The "domains" are broad areas of functioning that are "intended to capture all of what a child can and cannot do."  *Id*., § 416.924a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring himself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1). To "functionally equal" the listings, the impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain.  *Id*., § 416.926a(a), (d).  In making this assessment, the ALJ looks at "how appropriately, effectively, and independently" the claimant preforms their activities "compared to the performance of other children [the claimant's] age who do not have impairments."  *Id*., § 416.926a(b).  In each domain, the regulations provide "age group descriptors" summarizing the typical functioning of children in each group.  The age groups include preschool children (age 3 to attainment of age 6), school-age children (age 6 to attainment of age 12), and adolescents (age 12 to attainment of age 18).  *See, e.g.*, *id*., § 416.926a(h).

A minor has a "marked" limitation in a domain if their impairment "interferes seriously" with their "ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(2)(i).  The regulations also provide that "marked" limitations means a limitation that is "more than moderate" but "less than extreme."  *Id*.  A minor has an "extreme" limitation in a domain if his impairment "interferes very seriously" with their "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  The regulations also provide that an "extreme" limitation also means a limitation that is "more than marked."  *Id*.  However, "extreme" limitation does not mean a "total lack or loss of ability to function."  *Id*.

The claimant bears the burden of establishing a *prima facie* case of disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995); *see* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5.  This burden requires a

showing that the minor has an impairment listed in the regulations, and that he has met the duration requirement. *See* 20 C.F.R. § 416.924(a), 416.924(d)(2).

## V.       THE ALJ'S DECISION

The ALJ conducted the three-step childhood disability analysis set forth in 20 C.F.R. § 416.924. (AR 16–23.) The ALJ noted that I.F. was "a preschooler" on March 30, 2020, the date the application was filed, is "currently a school-age child," and that she had not engaged in substantial gainful activity since the application date (step one). (AR 16.) At step two, the ALJ found that I.F. had the severe impairments of anxiety; attention and concentration deficit disorder; adjustment disorder; and dyslexia. (AR 16.) The ALJ further found that I.F. had no impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the Listings, in that they resulted in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning (step three). (AR 16–19.) In reaching this finding, the ALJ considered the relevant medical evidence and opinions, function reports, Plaintiff's hearing testimony, and school records. (AR 18–23.) Although the ALJ recognized that I.F.'s impairments "could reasonably be expected to produce the alleged symptoms[,]" they rejected the subjective testimony in the record as "not entirely consistent with the medical evidence and other evidence in the record." (AR 21.) The ALJ also found the opinions of the state agency examiners "somewhat persuasive and consistent with the medical evidence." (AR 22.) The ALJ analyzed I.F's functioning "in terms of six functional equivalence domains," including (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. (AR 19–23.) The ALJ concluded that I.F. was not disabled. (AR 23.)

## VI.       DISCUSSION

Plaintiff asserts that remand is required because (1) the ALJ erred at step three by applying the "wrong age standard" to I.F. and (2) the ALJ and Appeals Council members were "not properly appointed." (*See* Docs. 15, 20.) The Commissioner responds that to the extent the ALJ incorrectly identified I.F. as a "preschooler," this error is harmless, as the opinion makes clear that the evidence on which the ALJ relied demonstrated Plaintiff's status as a school-aged child when they properly

5

found that Plaintiff did not functionally equal the severity of the Listings.  (*See* Doc. 19.)  The Commissioner also asserts that the then-Acting Commissioner Nancy Berryhill's ratification and approval of the appointments of ALJs and Appeals Council members was valid.  (*See id*.)

**A.      The ALJ's Finding that Plaintiff Was a "Preschooler" on the Application Date is Harmful Error**

A claimant's "age is an important factor" in determining disability.  20 C.F.R. § 416.924b.  "When determining whether a child suffers from limitations, the ALJ must compare the child to other children of the same age without impairments."  *McGee o/b/o J.S.F. v. Kijakazi*, No. 2:20-CV-2172 DB, 2022 WL 4123980, at *2 (E.D. Cal. Sept. 9, 2022) (quoting *Lawson ex rel. D.D.L. v. Astrue*, No. 4:08CV282 HEA, 2009 WL 2143754, at *8 (E.D. Mo. July 13, 2009).  As set forth above, applicable age group standards include preschool children age 3 to 6, school-age children age 6 to 12, and adolescents age 12 to 18.  20 C.F.R. § 416.926a(g)).  An ALJ's comparison of a child to the wrong age group renders the decision "fundamentally flawed."  *McGee o/b/o J.S.F.*, 2022 WL 4123980, at *2 (quoting *Tisdale ex rel. B.O.H. v. Astrue*, No. 8:07-CV-862-T-TGW, 2008 WL 4145838, at *3 (M.D. Fla. Sept. 8, 2008)).

I.F. "was born on April 1, 2009." (AR 16.) The ALJ was therefore correct that she was "currently a school-age child" at the time of the decision.  *Id*.; *see* 20 C.F.R. § 416.926a(g)(2)(iv) (defining school-age child as age 6 to attainment of age 12).  But, contrary to the ALJ's decision, I.F. was not a "preschooler" on March 30, 2020, the date the application was filed.  (AR 16.)

Defendant concedes this error, stating "the ALJ incorrectly identified Plaintiff as a preschooler in the first half of his first finding at AR 16." (Doc. 19 at 6.) The Commissioner asserts that the ALJ's error did not impact the ALJ's decision, and therefore harmless, as it is evident from "face of the decision" that the ALJ used the proper age group standards to compare Plaintiff's performance to other children her age without impairments.  (Doc. 19 at 6.)  The undersigned disagrees.

"Federal district courts have consistently held that this legal error warrants reversal and remand." *McGee o/b/o J.S.F.*, 2022 WL 4123980, at *2 (quoting *Ebony J. on behalf of O.C.J. v. Saul*, Civil Action No. 4:18-cv-0032, 2019 WL 9075875, at *9 (W.D. Va. Sept. 6, 2019)).  *See id*.

at *2–3 (granting summary judgment to the plaintiff where the ALJ incorrectly found the plaintiff was "currently a school-age child" at the time of the decision); *Yaws on behalf of B.D.H. v. Berryhill*, No. 4:15-CV-0961-Y-BL, 2017 WL 1026231, at *10 (N.D. Tex. Feb. 23, 2017) ("A failure to clearly consider the applicable age category may materially affect an ALJ's analysis and requires remand."); *Bucha v. Commissioner of Social Security*, Case No. 1:15-cv-1174, 2016 WL 5340271, at *4 (W.D. Mich. Sept. 23, 2016) ("It remains patent the ALJ mistakenly believed H.M. was a school-age child through the date of the decision, and it is equally clear that in arriving at her decision the ALJ relied, at least in part, on comparing H.M.'s adolescent activities to those typical of a younger, school-age individual."); *Artis v. Colvin*, No. 5:15-CV-119-FL, 2016 WL 937703, at *6 (E.D.N.C. Feb. 25, 2016) ("Although the ALJ cited evidence from Claimant's kindergarten and first grade teachers in her analysis it is far from clear whether she considered this evidence in light of the appropriate functioning of a school-age child listed in 20 C.F.R. § 416.926a(g)(2)(iv).  Therefore, the ALJ's error may have materially affected the analysis and, thus, requires remand."); *Kline ex rel. J.H.-K. v. Colvin*, No. 11 C 50376, 2014 WL 69953, at *16 (N.D. Ill. Jan. 9, 2014) ("The ALJ erred by applying the wrong age category in reaching her finding when the correct age category would require considerations that the ALJ failed to address.  Accordingly, the decision of the Commissioner is not supported by substantial evidence.").

Here, the undersigned cannot determine, from a review of the ALJ's decision, which age group category the ALJ applied to evaluate Plaintiff's functioning and, if they applied the wrong age group category, whether the analysis would have changed had they applied the correct one. Accordingly, the undersigned finds that remand is appropriate.  *See Tisdale ex rel. B.O.*H., 2008 WL 4145838, at *3 (finding "unpersuasive" Commissioner's argument that ALJ's error in comparing the plaintiff's functioning to children of a younger age group was harmless because "[i]f, in making [his] determination, the law judge compared the child to the wrong age group, the determination would be fundamentally flawed."); *Butler ex rel. J.B. v. Colvin*, No. CA 12-0382-C, 2013 WL 1007717, at *3 (S.D. Ala. Mar. 13, 2013) (finding that the ALJ misidentification of the claimant as a school-age child at the time of the decision, when he had in fact reached adolescence, was "certainly error requiring remand of [the] case," and noting that "if the age descriptors meant

nothing, the regulations would not make any age distinctions").

Specifically, the ALJ found that I.F. had "less than a marked limitation" in the domains of (1) acquiring and using information and (2) attending and completing tasks. (AR 20.) In the domain of acquiring and using information, the regulations state that the ALJ should consider how well the child acquires or learns information, and how well the child uses the information they have learned. 20 C.F.R. § 416.926a(g).

For a preschool child, the regulations provide:

> When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

*Id*. § 416.926a(g)(2)(iii).

For a school-age child, the regulations provide:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

*Id*. § 416.926a(g)(2)(iv).

The evidence of record indicates that I.F. cannot spell most 3-4 letter words, write a simple story with 6-7 sentences, or understand money to make correct change. (AR 165.) Her reading and writing abilities were assessed in February 2019 (age 9) at "minimally developed/beginner" and "somewhat/moderately developed," respectively. (AR 213.) She "continues to need prompts and support with her written expression." (AR 213.) Plaintiff testified at the hearing that I.F. has severe

dyslexia and that her reading level is between first and second grade.  (AR 35.  *See also* AR 352 (dyslexia diagnosis).)  According to school records dated November 2019 (age 10), I.F. is "weak in the areas of writing, math facts, [] reading fluency, and writing," and she "has auditory processing disorder that interferes with her ability to access grade level curriculum without special education supports and services."  (AR 213.)

In the domain of attending and completing tasks, the regulations state that the ALJ should consider how well the child is able to focus and maintain their attention, and how well the child begins, carries through, and finishes the activities, including the pace at which they perform activities and the ease with which the child changes them.  20 C.F.R. § 416.926a(h).

For a preschool child, the regulations provide:

> As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects.  You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys.  You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.

*Id*. § 416.926a(h)(2)(iii).

For a school-age child, the regulations provide:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments.  You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments).  You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate.  You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id*. § 416.926a(h)(2)(iv).

I.F.'s school records dated November 2019 (age 10) indicate that she is "distracted" and that her "on task time is below average."  (AR 213.)  According to a medical record dated February 2019 (age 9), I.F. was disruptive by talking in class and unknowingly "hum[ming] loudly" when angry or

anxious.  (AR 238.)  She was diagnosed with anxiety.  (AR 238.)  In March 2019, a medical record noted I.F. "has a hard time staying in her seat, needs consistent redirection, cannot [be told] more than one instruction at the same time, and needs [repetition]."  (AR 242.)  I.F. was also diagnosed with "adjustment disorder with anxiety" and "attention and concentration deficit disorder," and was prescribed Adderall.  (AR 245.)  I.F. was described by the treater in March 2019 (age 9) as: "May have difficulty in sustaining attention.  Seems to listen only when spoken to.  Squirms a lot.  Speech not spontaneous.  Fidgets with hands and squirms in seat.  Thought processes show distractibility. [M]anifests anxiety and restlessness."  (AR 285.)  I.F. was noted by her treatment provider in March 2020 (age 10) to have "[s]ignificant impairment in social, academic, and occupational functioning." (AR 306.)  Another treatment note dated October 2020 (age 11) observed that I.F. was under the care of a provider for "concentration problems."  (AR 356.)  At the hearing, Plaintiff testified I.F. needs help to dress herself and to take a shower, and "doesn't remember to pick things up."  (AR 33.)  According to Plaintiff, I.F. needs reminders to put on socks, brush her hair, and to clean herself, and that Plaintiff helps I.F. pack her things for school, shower, and perform personal cleaning.  (AR 34.)  Plaintiff testified that I.F. cannot do her homework on her own.  (AR 35.)  I.F. can only watch television for a short period, before she starts "running around the house."  (AR 38, 39.)

Given the extensive evidence of record indicating I.F.'s significant problems with learning and applying information, focus, and task completion, as described above, the undersigned questions whether substantial evidence would support a finding of a less-than-marked limitations in those areas, had the ALJ applied the correct age group standard (school-age).  Because the undersigned cannot tell whether they did so, the undersigned recommends that the action be remanded.[2]

## B.    The ALJ's Error Warrants Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to

---

[2] The Commissioner asks the Court to hold that, despite the ALJ's misclassification of I.F.'s age, there is substantial evidence to support the conclusion that M.S. does not have an impairment or combination of impairments that functionally equal the severity of one of the listed impairments based on I.F's functioning.  (*See* Doc 19 at 3–5.)  To do so would require the Court to independently weigh the evidence, applying the correct standard, thereby substituting its judgment for that of the ALJ.  This it cannot do.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").

remand to the agency for additional investigation or explanation."  *Treichler*, 775 F.3d at 1099 (citations omitted).  The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings."  *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule").  In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful."  *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time."  *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion."  *Swenson*, 876 F.2d at 689 (citation omitted).

The undersigned finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful.[3]  *See, e.g., McGee o/b/o J.S.F*, 2022 WL 4123980, at *6 (remanding for further proceedings including a de novo hearing and new decision).  The undersigned takes no position on whether I.F. is entitled to disability benefits for the relevant period.  The ALJ is, upon remand, to consider all of the relevant medical evidence in assessing I.F.'s functioning in all of the domains specified in the regulations and to apply the correct age group standard(s) when doing so.[4]

## VII.        FINDINGS AND RECOMMENDATIONS

For the reasons explained herein, IT IS HEREBY RECOMMENDED that:

1.        Plaintiff's motion for summary judgment (Doc. 15) be GRANTED;

2.        Defendant's cross-motion for summary judgment (Doc. 19) be DENIED;

---

[3] Plaintiff concedes that further administrative proceedings are appropriate in this case.  (*See* Doc. 20 at 3.)

[4] As the Court finds that remand for further proceedings is appropriate, the Court does not reach Plaintiff's additional assertion of error regarding the invalidity of the appointments of the ALJ and the Appeals Council (*see* Doc. 15 at 8–12; Doc. 20 at 3–8.)  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted . . . .").

3.      This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

4.      The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff Georgina Nardone, on behalf of minor child I.F., and against Defendant Acting Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 2, 2022**                    /s/ *Sheila K. Oberto*
                                                 UNITED STATES MAGISTRATE JUDGE